

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2003

# Wasserman v. Bressman

Precedential or Non-Precedential: Precedential

Docket 02-1725

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Wasserman v. Bressman" (2003). *2003 Decisions.* Paper 576.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/576

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 25, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1725

IN RE: ANDREW E. BRESSMAN,
Debtor

ROBERT B. WASSERMAN, Chapter 7 Trustee of the
Bankruptcy Estate of Andrew E. Bressman,
Appellant

v.

ANDREW E. BRESSMAN; STEFANIE BRESSMAN;
ARTHUR BRESSMAN, individually and as Trustee for the
Bressman Family Trust; PHYLLIS BRESSMAN; PERRI
BRESSMAN, a minor; HADLEY BRESSMAN; HYLA
BRESSMAN, a/k/a Hyla Jacobs; BANNON & WHITNEY,
INC., a corporation; PERSHING & CO., a corporation;
KOPSTEIN, VAN ALEN, NASH & CO., a corporation; MID
OCEAN TRUST LIMITED, a Cook Islands corporation, as
Trustee for the Bressman Family Trust; BRESSMAN
FAMILY TRUST; *NEWMAN & GREENBERG, a
partnership; *THE LAW OFFICES OF ROBERT HILL
SCHWARTZ; COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.C., a professional corporation;
SHAPIRO & CROLAND, a partnership including
professional corporations

*(Amended pursuant to Clerk's Order dated 6/11/02)

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 00-cv-00925)
District Judge: Honorable Joseph A. Greenaway, Jr.

Argued December 12, 2002

BEFORE: FUENTES and STAPLETON, *Circuit Judges*, and O'KELLEY,* *District Judge*

(Filed April 25, 2003)

———————

Harry M. Gutfleish (Argued)
Wasserman, Jurista & Stolz
225 Millburn Avenue
Millburn, NJ 07041
   Attorney for Appellant

Michael D. Sirota (Argued)
Cole, Schotz, Meisel, Forman &
  Leonard
25 Main Street
P.O. Box 800
Hackensack, NJ 07601
   Attorney for Appellees

———————

**OPINION OF THE COURT**

———————

STAPLETON, *Circuit Judge*:

I.

The Trustee in the Chapter 7 bankruptcy proceedings of Andrew Bressman ("Debtor") appeals the District Court's affirmance of the Bankruptcy Court's grant of summary judgment to Appellees, attorneys Newman & Greenberg, The Law Offices of Robert Hill Schwartz (together, "Newman & Schwartz"), and Cole, Schotz, Meisel, Forman & Leonard, P.A. ("Cole Schotz"). The Trustee seeks to recover certain funds received by appellees as counsel fees. We will affirm the judgment of the District Court.

—————————————————

* Honorable William C. O'Kelley, United States District Judge for the Northern District of Georgia, sitting by designation.

II.

In July, 1996, the Debtor filed voluntarily for bankruptcy protection under Chapter 11 of the Bankruptcy Code. The Bankruptcy Court approved Cole Schotz to represent the Debtor as debtor-in-possession. On June 9, 1997, the Chapter 11 proceedings were converted to Chapter 7 proceedings. Cole Schotz continued to represent the Debtor in the bankruptcy proceedings, but as counsel for the debtor out-of-possession. Upon his appointment, the Trustee engaged the same litigation counsel that had represented the Creditors Committee since the beginning of the Chapter 11 proceeding.

Upon the conversion to Chapter 7, Cole Schotz advised the Debtor that all payments for future services would have to be paid from non-estate sources. It thereafter received four fee payments: a check from the savings account of Stefanie Bressman, the Debtor's wife, on August 18, 1997; a check from Stefanie's PNC checking account on October 30, 1997; a check from the same account on December 8, 1997; and a check from PAS Realty, a firm owned by the Debtor's father, on January 2, 1998. It is only the December 8, 1997, check for $12,218.57 that is at issue here. On November 7, 1997, and January 7, 1998, Cole Schotz filed certifications with the Bankruptcy Court in accordance with § 329 of the Code reporting these fees for representing the debtor out of-possession and their source.[1]

In the summer of 1996, the Securities and Exchange Commission ("S.E.C.") commenced disciplinary proceedings against the Debtor as a result of his activities as president and C.E.O. of A.R. Baron & Co., Inc., a securities firm, which had also declared bankruptcy. In August, 1996, Stefanie Bressman hired Newman & Schwartz to provide

---

1. Pursuant to 11 U.S.C. § 329, "[a]ny attorney representing a debtor in a case under [the Bankruptcy code], or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid, . . . if such payment . . . was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."

representation for the Debtor in the S.E.C.'s proceedings as well as in any criminal proceedings that might ensue. The retention agreement required Mrs. Bressman to pay Newman & Schwartz a retainer of $50,000 and to make that payment and all ensuing payments of their fees with non-estate assets. At that time, Stefanie and the Debtor assured the attorneys responsible for the firm's representation that Stefanie came from a family of substantial financial means and had adequate assets, separate from the Debtor, with which to pay for the representation. Three days after she entered the retention agreement, Stefanie caused $50,000 to be wire transferred from her personal account at Chase Bank to Newman & Schwartz. The S.E.C.'s investigation led to a state court indictment of the Debtor for a variety of crimes. Upon Newman & Schwartz's advice, the Debtor exercised his Fifth Amendment right against self incrimination in both the criminal case and the bankruptcy proceedings. Eventually, the Debtor pled guilty to fraud and grand larceny.

Between August 8, 1996, and August 18, 1997, Newman & Schwartz was paid an additional $125,000 for services rendered to the Debtor. With the exception of one $50,000 payment received from his mother, each payment came from Stefanie. These payments are not at issue here. Rather, the Trustee seeks to recover six payments received by the firm from Stefanie's personal account at PNC Bank between November 20, 1997, and December 3, 1997.

More than a year before his bankruptcy, the Debtor established a trust in the Cook Islands. The Debtor's contingent interest in this trust was disclosed in the schedules filed with the Bankruptcy Court on July 18, 1996, and the Debtor testified concerning the terms of this trust at a hearing twenty days later that was attended by counsel for the Creditors Committee.

Between November 19 and December 5, 1997, six wire transfers totaling $430,000 passed from the Cook Islands trust to Mrs. Bressman's personal account. On the business day following each of the six transfers, Stefanie paid a substantial portion of the amount transferred to Cole Schotz and Newman & Schwartz in satisfaction of bills for

their respective representations of the Debtor. The six payments made to Newman & Schwartz totaled $380,000.

The Trustee, after his appointment on June 23, 1997, continued the efforts of the Creditors' Committee to identify and recover assets of the estate. On December 23, 1997, he instituted this suit against Stefanie, other family members and numerous firms to recover the assets of the Cook Islands trust for the estate. The complaint was amended to seek recovery of the fees paid to Newman & Schwartz and to Cole Schotz on May 26, 1998. The claims against all other defendants were settled without a determination of whether the trust was part of the Debtor's estate.

The Trustee and the law firms filed cross-motions for summary judgment. In support of their motions and in opposition to the Trustee's, the law firms filed affidavits of the responsible attorneys, which set forth the facts recounted above and averred that they had no knowledge that the Cook Islands trust was the source of the funds used by Stefanie to pay the fees at issue. Neither questioned Stefanie about the source of the funds because they believed they had no reason to do so.

In response to these affidavits, the Trustee filed an affidavit of his counsel. With respect to Cole Schotz, he described correspondence between that firm and himself in which he had inquired concerning the source of the fees being paid to Cole Schotz. This correspondence culminated in a letter to Cole Schotz on November 10, 1997, which stated in part as follows:

> I am in receipt of your supplemental Certification, dated November 7, 1997, acknowledging that, since the conversion of the within bankruptcy proceedings to Chapter 7, your firm has received approximately $18,000.00 from Stefanie Bressman in payment of fees incurred by your firm in connection with the within bankruptcy proceedings.

> I know that you are fully aware of the pending adversary proceeding against Stefanie Bressman, seeking recovery of funds transferred to Mrs. Bressman as fraudulent conveyances. The purpose of this letter is to advise you that Mr. Wasserman, as Bankruptcy

> Trustee, will likely be forced to seek disgorgement of the fees paid to your firm by Stephanie [sic] Bressman if it is ultimately determined that such fees are the "fruit" of fraudulent conveyances by Mr. Bressman. Please be guided accordingly.

App. IV at Tab 24, pp. 5-6.

With respect to Newman & Schwartz, Trustee's counsel stressed the following telephone conversation with one of the firm's attorneys who represented the Debtor in the on-going criminal proceedings:

> 16. On October 15, 1997, I received a telephone call from Richard A. Greenberg, Esq. of Newman & Schwartz, concerning the Trustee's Rule 2004 Subpoena. Mr. Greenberg wanted to know (a) why the Trustee was interested in the source of Newman & Schwartz's fees; and (b) whether Mr. Newman was required to appear for a deposition of October 31, 1997.

> 17. In response, I advised Mr. Greenberg that the Trustee was investigating whether his firm had received payment from funds or assets that constituted property of Andrew Bressman's bankruptcy estate and that the Trustee would seek disgorgement of any fees paid from estate property. Mr. Greenberg stated this his firm had not received payment from Andrew Bressman. I responded that the mere fact that the payments were not received from Andrew Bressman did not mean that Newman & Schwartz was not paid with estate assets.

App. IV at Tab 24, p. 7.

Before the Bankruptcy Court, the Trustee contended that the challenged fee payments were unauthorized post-petition transfers recoverable under §§ 549 and 550. He further asserted that Newman & Schwartz had violated § 329 by failing to report the challenged fee payments to the Bankruptcy Court and that both firms had violated §§ 327 and 330 by receiving funds of the Debtor's estate without court approval. According to the Trustee, these violations of §§ 327, 329 and 330 required that the challenged fees be "disgorged."

The Bankruptcy Court assumed without deciding that the trust was an asset of the bankrupt's estate. It held that, even making this assumption, §§ 327, 329 and 330 were not applicable to the situation before it and that the only remedies potentially available to the Trustee were authorized by §§ 549 and 550. It further ruled, however, that the firms were transferees "for value, . . . in good faith, and without knowledge of the voidability of the transfer" within the meaning of § 550(b)(1). The law firms' affidavits provided *prima facie* evidence that they had no reason to know that the challenged fees came from the trust and the Trustee had not satisfied its burden of producing sufficient evidence to support a contrary inference. On appeal, the District Court affirmed.

The Trustee advances the same arguments before us, urging that we reverse the judgment of the District Court and remand with instructions to enter summary judgment for the Trustee.

### III.

Section 549(a) of the Bankruptcy Code authorizes the Trustee to avoid post-petition transfers of property of the estate that are not authorized by the Code or an order of the Bankruptcy Court. Section 550(a) provides that, to the extent a transfer is avoided under § 549(a), the Trustee may recover the property transferred or its value from the initial transferee or from any subsequent transferee. Under § 550(b)(1), however a Trustee may not recover an otherwise avoidable transfer from a subsequent transferee "that takes for value . . . , in good faith, and without knowledge of the voidability of the transfer avoided." We may assume *arguendo* for present purposes that § 550(b)(1) creates an affirmative defense with respect to which the transferee has the burden of persuasion, as held by the Sixth Circuit Court of Appeals in *In re Nordic Village, Inc.*, 915 F.2d 1049, 1055-56 (6th Cir. 1990), *rev'd* on other grounds, 530 U.S. 30 (1992).[2]

---

2. This court has never addressed this burden of persuasion issue, and we find it to be a difficult one. The *Nordic Village* court reached its

The Trustee acknowledges that the firms "took for value." He insists, however, that the law firms were on "inquiry notice" that the original source of Stefanie's payments was the trust, that the trust assets were a part of the estate, and accordingly that the transfers were voidable. Like the Bankruptcy Court and the District Court, we will assume in our analysis of the Trustee's arguments that the trust was an estate asset. We accept, as the controlling law, the precepts articulated in the following quotation from the

---

conclusion based on the text of § 550(b)(1) and an analogy to § 549(c), which under certain circumstances bars the trustee from avoiding an initial transfer of real property from the estate to a good faith purchaser for value and without knowledge of the commencement of the bankruptcy case. Bankruptcy Rule 6001 places the burden of persuasion on a transferee relying on § 549(c). It is not at all clear to us that "the language of the statute clearly places the burden of showing value, good faith, and lack of knowledge, on the transferee as a defense." *Id.* at 1055. Moreover, we agree with the *Nordic Village* dissent that the Code treats initial transferees in a different manner than subsequent transferees and that a substantial argument can be made in favor of placing the burden of proof on the trustee with respect to subsequent transferees. As the dissent in *Nordic Village* put it:

> Although the Code makes clear that initial transferees are generally presumed to be on notice of the voidability of a transfer and have few if any defenses to the trustee, (*see* 11 U.S.C. §§ 549, 550(a)(1); Bankruptcy Rule 6001), the Code also makes clear that subsequent transferees are not under such a severe disability. 11 U.S.C. § 550(b). Such a dichotomy is rationally related to the fact that initial transferees will generally have knowledge and therefore act in bad faith since they deal directly with the bankrupt. In contrast, subsequent transferees are much more likely to be innocent third parties. They have little ability to protect themselves by making cursory checks on their transferor. Absent an express rule placing the burden of proof on subsequent transferees, I believe the burden should rest on the party seeking to recover the property, at least as to the issues of the subsequent transferee's good faith and knowledge.

*Nordic Village*, 915 F.2d at 1063-64.

Because we conclude that the law firms have made a sufficient showing even assuming they have the burden of persuasion, we reserve this issue for another day.

Trustee's brief (quoting from *In re Sherman*, 67 F.3d 1348, 1357 (8th Cir. 1995):

> "No one supposes that 'knowledge of voidability' means complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do." *Bonded Fin. Servs.*, 838 F.2d [890, 898 (7th Cir. 1988)] (citations omitted). . . . Accordingly, we believe that a transferee has knowledge if he "knew facts that would lead a reasonable person to believe that the property transferred was recoverable." *In re Nordic Village, Inc.*, 915 F.2d 1049, 1055 (6th Cir. 1990) (quoting *Smith*, 788 F.2d at 232 n.2), *rev'd* on other grounds sub nom. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 117 L. Ed. 2d 181, 112 S. Ct. 1011 (1992). In this vein, some facts suggest the underlying presence of other facts. If a transferee possesses knowledge of facts that suggest a transfer may be fraudulent, and further inquiry by the transferee would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heels, thereby preventing a finding that he has knowledge. In such a situation, the transferee is held to have knowledge of the voidability of the transfer. *In re Agricultural Research & Technology Group*, 916 F.2d [528, 536 (9th Cir. 1990)]; *Bonded Fin. Servs.*, 838 F.2d at 898; *In re Goodwin*, 115 B.R. 674, 677 (Bankr. C.D. Cal 1990).

Appellant\Trustee's Br. at 41.

We will, however, supplement this quotation with the following observations of the Court in *Bonded Financial Services v. European American Bank*, 838 F.2d 890, 898 (7th Cir. 1988), from which the *Sherman* Court took its law:

> Some facts strongly suggest the presence of others; a recipient that closes its eyes to the remaining facts may not deny knowledge. *See Bosco v. Serhant*, 836 F.2d 271[, 276-78] (7th Cir. 1987). But this is not the same as a duty to investigate, to be a monitor for creditors' benefit when nothing known so far suggests that there is a fraudulent conveyance in the chain. "Knowledge" is a stronger term than "notice", *see Smith v. Mixon*, 788

F.2d at 232. A transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own.

It is undoubtedly true, as the Trustee insists, that he put the firms on notice just prior to their receipt of the challenged payments that he was investigating whether they were being paid from estate assets and would seek to recover them if his investigation revealed that they were. This does not mean, however, that the giving of such notice gave them "knowledge of the voidability" or imposed a duty on them to initiate their own investigation. Rather, the issue is whether the facts known to the firms and the reasonable inference to be drawn from those facts would affirmatively suggest to a reasonable person in their position that they were receiving assets of the estate. If not, there would be no duty to investigate.

Having determined the applicable substantive law, we turn to the law of summary judgment and the application thereof to the record before us. Summary judgment is appropriate only where the court is satisfied "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Insofar as the Trustee's motion for summary judgment is concerned, the law firms' burden in opposing that motion, even assuming they have the trial burden of persuasion on the good-faith\no-knowledge issue, is simply to come forward with evidence which, if believed, would support a finding in its favor or, stated otherwise, such evidence as would entitle it to "successfully resist a motion for a directed verdict." *United States v. One 107.9 Acre Parcel of Land*, 898 F.2d 396, 398 (3d Cir. 1990). The affidavits filed by the law firms clearly satisfied this burden, and it follows that the Trustee is not entitled to summary judgment on the record before us.

Turning to the law firms' motions for summary judgment and assuming, again, that they have the burden of proof on the good-faith\no-knowledge issue, they had the burden of supporting their motions "with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331

(Brennan, J., dissenting[3]); *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175-76 (3d Cir. 1990); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) ("To obtain summary judgment, 'if the movant bears the burden of proof on an issue . . . because . . . as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in his favor.' " (quoting from 780 F.2d 1190 (5th Cir. 1986)); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."). *See also Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992);11 Moore, *Federal Practice* § 56.13[1] p.56-138. Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact. Fed. R. Civ. P. 56(e); *Four Parcels, supra.*

The most difficult issue here is whether the law firms' support for their motions was sufficient to meet this concededly high standard and thereby put the burden on the Trustee to come forward with evidence demonstrating that there is a genuine issue for trial. While we think it is a close issue, we conclude that this burden has been met.

It is, of course, true that the probative value of the law firms' denial of relevant knowledge depends on the credibility of their witnesses. But their testimony finds substantial corroborating evidence in the record and, in the absence of any contrary evidence, we believe it would have to be accepted by a reasonable jury.

---

3. Justice Brennan's dissent does not differ with the opinion of the Court regarding the appropriate standards for summary judgment. The disagreement is with respect to the application of those standards to the record before the Court in *Celotex.*

The record demonstrates that the members of each firm handling their respective representations were sophisticated, experienced lawyers who understood the risk entailed in being paid with estate assets and specifically focused on that issue. This is corroborated in the case of Newman & Schwartz by the fact that the responsible attorney insisted in the representation agreement on receiving payment for their services from non-estate assets. In the case of Cole Schotz, corroboration comes from the fact that the firm changed its arrangement with the Debtor for the payment of its fees upon the conversion of the Chapter 11 proceeding to a Chapter 7 proceeding.

The record also demonstrates that each firm anticipated providing a very substantial amount of legal services in the course of its representation. Investing those services while having knowledge that they were being paid with estate assets involved a risk of loss that it is economically unrealistic to attribute to the firms. The firms' conduct in making the investment of their services in their respective representations thus corroborates their sworn denial of knowledge. Because of that corroboration, we believe a reasonable jury could not reject those denials in the absence of some substantial evidence that they had the knowledge they deny having.

Having concluded that the firms adequately supported their motions for summary judgment, we now turn to the issue of whether the Trustee carried its burden of demonstrating that there is a genuine issue of material fact for trial. Like the Bankruptcy Court and the District Court, we conclude that he has not.

As we have noted, the Trustee's primary argument is that he put the firms on notice that recovery would be sought if his investigation revealed payments from estate assets and that they are, therefore, chargeable with the facts they would have learned through an investigation. We have already held that this "putting on notice" did not, by itself, give rise to a duty to conduct an independent investigation. We hold as well that the firms' knowledge of the fact that the Trustee was investigating is not itself probative on the issue of whether the firms had reason to believe they were being paid from estate assets. Conducting an investigation

and attempting to identify and recover estate assets are responsibilities of the Trustee and the fact that he is pursuing those responsibilities does not suggest that any particular asset is recoverable by the Trustee.

Next, the Trustee points to evidence tending to show that the firms were aware of the existence of the Cook Islands trust. Knowledge of the existence of the trust, however, is not probative of knowledge that the trust was an asset of the estate, much less of knowledge that the challenged payments originated with the trust. The Debtor left a tangled web of affairs. The Creditors Committee and litigation counsel for the Trustee were aware of the existence of this trust in the summer of 1996 and did not know enough to assert a claim that it was an estate asset until December 23, 1997. A claim that the challenged checks came from the trust was not asserted until May 26, 1998.

The Trustee also finds significance in the fact that Cole Schotz, though not Newman & Schwartz,[4] became aware prior to its receipt of the challenged payments that the Creditors Committee had instituted an adversary proceeding against the Debtor, Stefanie, their minor daughter, and 28 others seeking to avoid allegedly fraudulent transfers. This proceeding, however, did not mention the Cook Islands trust or either of the law firms.[5]

Even wider of the mark, in our judgment, is the Trustee's emphasis on the facts that the Debtor had been indicted for supervising a criminal enterprise and that in a May 1997 press conference statement, the Manhattan District Attorney had asserted that the Debtor and his codefendants

---

4. Newman & Schwartz's affidavit avers that it had no knowledge of the Committee's adversary proceeding until this proceeding is uncontradicted in the record.

5. We note that, even if the Committee's claims against others, with respect to different assets, had been sufficient to require the law firms to insist upon a demonstration that Mrs. Bressman had non-estate assets at the outset of their representations, the record does not indicate that they would have discovered that she did not. Prior to the receipt of the challenged checks, both firms had received a series of checks from Stefanie that have not been challenged.

had put money in Swiss and other off-shore banks, including a Cook Islands trust. As we have indicated, everyone involved knew from the summer of 1996 that the Debtor had created a Cook Islands trust in which he retained a contingent interest. Yet even those specifically responsible for tracing the Debtor's assets made no claim that the Cook Islands trust was an estate asset until December 1997 and made no claim that the challenged payments came from the trust until May of 1998, long after the law firms received the challenged payments.

In summary, each of the law firms came forward with persuasive evidence that they knew they could not accept payment from estate assets, that they so advised their clients, that the clients committed to pay from non-estate assets, that the challenged payments came from non-estate sources, and that they were unaware of any connection between the payments and estate assets. In response, the Trustee came forward with no probative evidence of the firms being aware of facts that would affirmatively suggest they were receiving assets from the estate. Accordingly, the District Court appropriately entered summary judgment in favor of the law firms.[6]

## IV.

We also agree with the Bankruptcy Court and the District Court that it is §§ 549 and 550 of the Code that govern the liability of the law firms in a situation of this kind. While it is true that a bankruptcy court may order the disgorgement of fees received by an attorney when he or she has ignored reporting and court approval duties imposed by the Code, *see* 11 U.S.C. § 329; *In re W.T. Mayfield Sons Trucking Co., Inc.*, 225 B.R. 818 (Bankr. N.D. Ga. 1998) (ordering disgorgement for a violation of § 327), the Trustee had identified no statutory sections that imposed such duties on the firms in the situation before us. While the Trustee contends that Newman & Schwartz failed to comply with

---

6. Given the absence from the record of a Rule 56(f) affidavit asking for a continuance and setting forth the additional discovery the Trustee desired to take, it would be inappropriate for us to grant the Trustee's request that we remand for further discovery.

the reporting requirement of § 329 and that both firms received fees from the estate in violation of § 330, we, too, conclude that those provisions are inapposite.

### A.

Pursuant to § 329,

> [a]ny attorney representing a debtor in a case under [the Bankruptcy Code], or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid . . . if such payment . . . was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329.

The Trustee urges that the representation provided to the Debtor by Newman & Schwartz was "in connection with" the bankruptcy case and, therefore, Newman & Schwartz had an obligation under § 329 to disclose the amount and source of their compensation to the bankruptcy judge. Since they failed to do so, the Trustee urges, their fees should be disgorged.

The Trustee concedes, as he must, that § 329 does not require a report to the Bankruptcy Court regarding all counsel fees paid by a debtor during, or within a year prior to, bankruptcy. It speaks only of fees paid for representation of the debtor in a case under the Bankruptcy Code or in connection with such a case. Thus, representation of a debtor in a criminal case during the period of bankruptcy would not normally require a report any more than would representation of the debtor in a divorce proceeding during that period. *See, e.g., In re Swartout*, 20 B.R. 102 (Bankr. S.D. Ohio 1982). While acknowledging this, the Trustee nevertheless insists that this case is different because of three alleged connections between Newman & Schwartz's representation of the Debtor and the bankruptcy proceeding. First, the Debtor pled

guilty in the criminal proceeding and agreed to cooperate with the District Attorney, and those decisions of the Debtor "led to" a settlement of civil claims which benefitted the estate. Second, Newman & Schwartz advised the Debtor to claim the Fifth Amendment in the bankruptcy proceedings and reviewed a brief filed in those proceedings which relied upon the Debtor having to assert the Fifth Amendment in the criminal proceedings. Finally, the Trustee points to three entries in Newman & Schwartz's billing records that refer to an attorney having reviewed "bankruptcy related" documents, as well as a small number of telephonic conferences with bankruptcy counsel.

We find no § 329 violation. Nothing in the record suggests that Newman & Schwartz did anything other than provide representation to the Debtor in the criminal proceedings against him. It advised him to assert his Fifth Amendment privilege in those proceedings and, when he decided to do so, it advised him on what he must do to preserve the privilege, including asserting it in the bankruptcy proceeding. While its fee sheets indicate that it spent a minimal amount of time reviewing "bankruptcy related" documents and speaking to the Debtor's bankruptcy counsel, nothing suggests that this was for any purpose other than providing effective representation in the criminal proceedings. Finally, while the Debtor's guilty plea may have made a civil settlement possible, the Trustee concedes that Newman & Schwartz played no role in negotiating the settlement agreement that benefitted the bankruptcy estate. Although there was thus a "but for" causal relationship between the plea and the settlement, we conclude that this does not satisfy the "in connection with" requirement of § 329. Actions taken by a client in the course of a representation will normally have a multitude of side effects, with respect to which counsel has assumed no responsibility and, indeed, of which counsel may have no knowledge. If § 329 were held to sweep so broadly, it is difficult to understand how even the most conscientious of counsel could assure compliance.

## B.

Section 327(a) provides that the trustee may, with court approval, engage an attorney to assist the trustee in

fulfilling her responsibilities. Section 327(e) provides further authority for the Trustee, with court approval, to "employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interests of the estate." Section 330 authorizes the court to provide "reasonable compensation" for attorneys employed under §§ 327(a) and (e), so long as the services were "reasonably likely to benefit the debtor's estate or . . . necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A)(ii). The purpose of §§ 327 and 330 is to allow for the necessary participation of lawyers in the bankruptcy process, while remedying the lack of incentive, on the part of the debtor, to negotiate attorneys' fees and to find representation at a cost-effective level. *In re Engel*, 124 F.3d 567, 572-73 (3d Cir. 1997).

Section 327(e) does not apply to either the representation of the Debtor by Newman & Schwartz or that by Cole Schotz and, accordingly, we find no violation of the compensation scheme provided by §§ 327 and 330. Neither firm was engaged for the direct or indirect benefit of the bankrupt estate, and neither was looking to the bankrupt estate for payment of its fees. Contrary to the Trustee's suggestion, we find nothing in the text or legislative history of §§ 327 and 330 indicating that they were intended to impose strict liability on an attorney whenever he receives estate funds without § 330 court approval, albeit unknowingly. Rather, we agree with the District Court that, where estate funds are paid to an attorney other than for the benefit of the estate, the trustee's remedy is provided by sections of the Code other than §§ 327 and 330 — in this instance, §§ 549 and 550.

We find the cases relied upon by the Trustee inapposite. Suffice it to say that none involved payment of estate funds to an attorney for representation of a debtor out of possession nor for representations unconnected with a bankruptcy proceeding when the attorney lacked knowledge of the source of the funds.

### V.

The judgment of the District Court will be affirmed.

18

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*