**In re RESOURCE, RECYCLING & REMEDIATION, INC., Debtor.**

**Robert L. Williams, Chapter 7 Trustee, Plaintiff**

v.

**Louis Mortillaro and Re-Ink, Inc., Defendants**

**Bankruptcy No. 02–20777 BM. Adversary No. 03–02595 BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 1, 2004.

*Wile,* 310 B.R. at 517.

Matt A. Jarrell, Sherrard, German & Kelly, PC, Pittsburgh, PA, for Plaintiff.

Jonathan G. Babyak, Campbell & Levine, LLC, Pittsburgh, PA, for Defendants.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

In this adversary action the chapter 7 trustee seeks to recover from defendant Louis Mortillaro the value of a previously-avoided transfer of assets from debtor Resource Recycling & Remediation, Inc. to Ink Solutions, Inc. Recovery is based on § 550(a)(2) of the Bankruptcy Code.

Defendant Mortillaro contends that the exception to such recovery which is found at § 550(b)(1) applies in this instance and that the chapter 7 trustee may not recover

from him the value of the assets so transferred.

Judgment will be entered in favor of defendant Mortillaro and against the chapter 7 trustee for reasons stated in this memorandum opinion.

## — FACTS —

Debtor was in the business of recycling ink products. In addition to having a facility in Pittsburgh, Pennsylvania, debtor also had facilities in Aurora, Illinois, and Houston, Texas. The facilities in Texas and Illinois were closed in June of 2001 and February of 2002, respectively.

Debtor was related to another corporation known as Ink Solutions, Inc., which also was in the business of recycling ink products. Except for having the same sole shareholder, the precise nature of their relationship is not indicated in the record.

At some unspecified time in the year 2001 debtor transferred equipment and machinery used in its ink recycling business to Ink Solutions. The record does not indicate from which of the above three facilities the transferred assets came.

At some time prior to the above transfer Ink Solutions moved its facility from Jessup, Maryland, to Columbia, Maryland.

Three creditors with general unsecured claims totaling $895,473.21 brought an uncontested involuntary chapter 7 petition against debtor on January 23, 2002. Upon entry of the order for relief on February 25, 2002, and appointment of a chapter 7 trustee shortly thereafter, debtor closed down its Pittsburgh facility.

Debtor indicated on its schedules that it had no assets and had liabilities approximating $290,000. In its statement of financial affairs, debtor indicated that it had not transferred any of its assets other than in the ordinary course of business in the year prior to the bankruptcy filing. The

above transfer from debtor to Ink Solutions was not disclosed.

Ink Solutions defaulted on its lease obligations for the facility located in Columbia, Maryland, and abandoned the premises around the time the involuntary petition was brought against debtor. The eventual fate of Ink Solutions is not indicated in the record of this case.

When Ink Solutions ceased operations it abandoned its facility in Columbia, Maryland, and left behind various pieces of equipment and machinery and thousands of barrels of contaminated ink. The record does not indicate whether the barrels of ink were included among the items transferred from debtor to Ink Solutions. Some of the ink left behind by Ink Solutions was no longer recyclable and had to be disposed of in accordance with applicable regulations for protecting the environment. It could not be simply poured down the drain or hauled away as ordinary trash.

Defendant Mortillaro had been employed by debtor and for Ink Solutions for an unknown number years prior to 2001 and was responsible for overseeing quality control of recycled ink. He was an employee of Ink Solutions until shortly before it abandoned the facility and had not been paid for at least four months.

The landlord of the facility Ink Solutions had abandoned came to an agreement with Mortillaro in January of 2003. They agreed that defendant Mortillaro could take any of the equipment and machinery Ink Solutions left behind in exchange for Mortillaro's taking and assuming responsibility for a certain percentage of the barrels of ink left it also left behind.

At or about the time of the agreement, Mortillaro formed a corporation known as Re–Ink, Inc., which processes and recycles used ink.

Shortly thereafter, Mortillaro removed equipment from the facility along with an undetermined number of barrels of ink and moved them at his own expense to Re–Ink's facility. The exact number of barrels of ink Mortillaro removed and how many could no longer be recycled is not indicated in the record of this case.

The chapter 7 trustee commenced an adversary action at Adv. No. 03–2073 pursuant to §§ 548(a) and 550(a) of the Bankruptcy Code on January 31, 2003. The defendants named therein were debtor, Ink Solutions, Michael Jones and Katherine Jones, the wife of Michael Jones and CEO of Ink Solutions.

A default judgment was entered on June 4, 2003, against debtor, Michael Jones and Ink Solutions when they failed to answer the complaint. The order provided, among other things, that the conveyance from debtor to Ink Solutions was fraudulent and void and authorized the chapter 7 trustee to take charge of the assets debtor had transferred to Ink Solutions. The action subsequently was dismissed as to defendant Katherine Jones on September 30, 2003, with the consent of the chapter 7 trustee.

The chapter 7 trustee then initiated this adversary action On September 10, 2003, against defendant Mortillaro, the landlord of Ink Solutions, and Re–Ink, Inc. at Adv. No. 03–2595. The cause of action asserted in the complaint was based on §§ 548(a) and 550(a) of the Bankruptcy Code, the same provisions as were utilized in the prior adversary action. The landlord subsequently was dismissed as a defendant on November 4, 2004, with the consent of the chapter 7 trustee.

The chapter 7 trustee alleges in the complaint in the present adversary action that the landlord of Ink Solutions transferred debtor's assets to defendant Mortillaro "with actual fraud and with the intent to hinder, delay and defraud creditors" (¶ 12). Defendant Mortillaro, "who knew or should have known of the bankruptcy case filed against debtor in 2002 as well as the fraudulent transfer between Resource Recycling & Remediation and Ink Solutions", then transferred the assets of Resource Recycling & Remediation to Re–Ink, "with actual fraud and the intent to hinder and delay and defraud creditors" ( ¶¶ 13, 14 and 15). In the *ad damnum* clause of the complaint the chapter 7 trustee requests a judgment against defendants in an amount equal to the value of the transferred assets along with any profits and income derived therefrom.

The matter was tried and was briefed by the parties and is now ready for decision.

## — DISCUSSION —

A transfer must be avoided before its value can be recovered in accordance with § 550(a) of the Bankruptcy Code. *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 n. 3 (6th Cir.2003). It is a *sine qua non* of such a recovery action.

In this adversary action the chapter 7 trustee seeks in accordance with § 548(a)(1)(A) of the Bankruptcy Code to avoid as fraudulent the transfer of equipment, machinery and barrels of ink from the landlord of Ink Solutions to defendant Mortillaro. In addition, he seeks in accordance with § 550(a)(2) of the Bankruptcy Code to recover from defendant Mortillaro the value of this transfer.

Section 548(a) of the Bankruptcy Code provides in relevant part as follows:

(a)(1) the trustee may avoid any transfer of an interest of the debtor in property ... that was made ... within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made, ... indebted ....

11 U.S.C. § 548(a)(1)(A).

The chapter 7 trustee may not utilize § 548(a)(1)(A) in this adversary action to avoid the transfer that occurred when the landlord of Ink Solutions transferred to defendant Mortillaro the items Ink Solutions left behind when it abandoned the facility in Columbia, Maryland. This transfer occurred in January of 2003, approximately one year *after* the involuntary bankruptcy petition against debtor was filed and approximately ten months *after* the order for relief was entered in the case on February 25, 2203. By its express terms, § 548(a)(1) requires that the transfer to be avoided be made within one year *before* the date on which a bankruptcy petition is filed.

While the chapter 7 trustee may not utilize § 548(a)(1) to avoid the transfer from the landlord of Ink Solutions to defendant Mortillaro [1], the chapter 7 trustee nonetheless may in theory recover from defendant Mortillaro the value of the assets debtor transferred to Ink Solutions. A default judgment was entered on June 4, 2003, against debtor, Ink Solutions and Michael Jones. Defendant Mortillaro has not collaterally attacked or otherwise challenged the validity or effect of that judgment. The chapter 7 trustee did not, however, recover from Ink Solutions or Michael Jones the value of the transfer, most likely because neither of them has an ability to satisfy such a judgment.

Due to the favorable outcome of the earlier § 548(a) avoidance action brought against debtor, Ink Solutions and Michael Jones, the chapter 7 trustee may be in a position to recover the value of that transfer from defendant Mortillaro in this adversary action. See *Weinman v. Simons (In re Slack–Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir.1992).

Section § 550(a) of the Bankruptcy Code provides in relevant part as follows:

Except as provided otherwise in this section, to the extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from —

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

The transfer from debtor to Ink Solutions undoubtedly qualifies as a "transfer" for purposes of § 550(a). Every mode, whether it be direct or indirect, absolute or conditional, or voluntary or involuntary, of parting with property or an interest in property constitutes a transfer for purpose of the provisions of the Bankruptcy Code. 11 U.S.C. § 101(54).

Ink Solutions qualifies for purposes of § 550(a) as the initial transferee of the transfer the chapter 7 trustee avoided in the other adversary action. The landlord of Ink Solutions and defendant Mortillaro, respectively, qualify as the immediate

---

**1.** We need not decide whether the chapter 7 trustee may avoid the transfer from the landlord of Ink Solutions to defendant Mortillaro as a post-petition transfer in accordance with § 549(a) of the Bankruptcy Code. A cause of action under this Code provision was never pled or mentioned until the trustee's *post*-trial brief. Even if he can so avoid this transfer pursuant to § 549(a), the chapter 7 trustee nonetheless cannot recover its value from defendant Mortillaro for reasons set forth in this memorandum opinion.

transferee and the mediate transferee for purposes of § 550(a)(2).

Defendant Mortillaro asserts that this court lacks jurisdiction to hear and decide the claim brought under § 550(a) because § 548(a) may not be utilized in this case to avoid the transfer from the landlord of Ink Solutions to defendant Mortillaro.

This assertion is without merit. We unquestionably have jurisdiction to decide *in this case* whether the trustee is entitled to recover from defendant Mortillaro the value of the transfer from debtor to Ink Solutions that was successfully avoided in another case.

■ Section 550(a) is a recovery provision and gives rise to a secondary cause of action which applies after the trustee has prevailed under one (or more) of the avoidance provisions found in the Bankruptcy Code. *Santee v. Northwest National Bank (In re Mako)*, 127 B.R. 471, 473 (Bankr. E.D.Okla.1991).

■ The chapter 7 trustee need not have joined defendant Mortillaro as a defendant in the prior adversary action against Ink Solutions and Michael Jones as a prerequisite to recovering from Mortillaro pursuant to § 550(a). The trustee may instead bring *another* adversary action against Mortillaro seeking to recover the value of the transfer from debtor to Ink Solutions that was avoided in the previous adversary action.

Support for this proposition is found at § 550(f) of the Bankruptcy Code, which provides as follows:

An action or proceeding under this section may not be commenced after the earlier of—

(1) one year after the avoidance of the transfer on account of which recovery is sought; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 550(f).

This provision implies that a proceeding to recover the value of an avoided transfer may, subject to the time limitation specified therein, be initiated against an immediate or mediate transferee of the initial transferee in a separate proceeding and after the proceeding against the initial transferee has been decided. The proceeding to recover the value of the transfer must, however, be commenced within the earlier of one year *after* the transfer has been avoided or the case is closed or dismissed.

Returning to the question of jurisdiction, a bankruptcy court's subject-matter jurisdiction lies not in the Bankruptcy Code, but in 28 U.S.C. § 1334 and 157. *Resorts International Financing, Inc. v. Price Waterhouse & Co. (In re Resorts International Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004).

Upon referral from the district court, a bankruptcy court has jurisdiction over four types of proceedings: (1) cases *under* title 11; (2) proceedings *arising under* title 11; (3) proceedings *arising in* a case under title 11; and (4) proceedings *related to* a case under title 11. *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1175 (3d Cir.1996).

The first category "refers to the bankruptcy petition itself". *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991).

■ The second category consists of proceedings that are created or determined by a specific provision of the Bankruptcy Code itself. *In re Wolverine Radio*, 930 F.2d 1132, 1144 (6th Cir.1991), *cert dismissed*, 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992). A proceeding brought pursuant § 548(a) and/or

§ 550(a) of the Bankruptcy Code are examples.

The third category consists of proceedings which, by their very nature, could arise only in the context of a bankruptcy case. *Id.,* 930 F.2d at 1144.

The final category consists of proceedings whose outcome "could conceivably have an effect on the estate being administered in bankruptcy". *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). Bankruptcy jurisdiction over such proceedings exists when it is possible that a proceeding may "impact on debtor's rights, liabilities, options or freedom of action". *In re Marcus Hook Development Park,* 943 F.2d at 264.

A proceeding based on § 550(a) of the Bankruptcy Code arises under title 11 as defined above and is a "core" proceeding. 28 U.S.C. § 157(b)(2)(H). As such, we may hear and determine the matter. 28 U.S.C. § 157(b)(1). Clearly, a decision favoring plaintiff will have an impact on the rights of parties in interest.

Having concluded that we have jurisdiction to hear and decide the trustee's action to recover from defendant Mortillaro the value of the assets debtor transferred to Ink Solutions, we turn next to the merits of this action.

The trustee's ability to recover from an initial transferee in accordance with § 550(a)(1) is "absolute". *Abele v. Modern Financial Plans Services, Inc.,* 300 F.3d 1097, 1102 (9th Cir.2002). The situation is otherwise with respect to the trustee's ability to recover the value of an avoided transfer from an immediate or mediate transferee in accordance with § 550(a)(2). The trustee's ability to recover in such situations is subject to the following limitation:

The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, . . . in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee . . . .

11 U.S.C. § 550(b).

The term "for value" in this provision does not require that any value be given by a subsequent transferee *to the debtor.* A subsequent transferee need only provide value *to its transferor*—in this instance the landlord of Ink Solutions. *Bonded Financial Services v. European American Bank,* 838 F.2d 890, 897 (7th Cir.1988). Moreover, the *quantum* of value provided need not be reasonably equivalent to the value the transferee received from its transferor. *Coleman v. Home Savings Association (In re Coleman),* 21 B.R. 832, 836 (Bankr.S.D.Tex.1982).

We conclude that defendant Mortillaro acquired the equipment and barrels of ink from the landlord of Ink Solutions "for value". When Ink Solutions abandoned its facility in Maryland the landlord was stuck with thousands of barrels of ink, much of which probably was not recyclable; it would have to be disposed of, at considerable cost to the landlord, in compliance with environmental regulations. In return for agreeing to take some of these barrels of ink and to relieve the landlord of this cost, defendant Mortillaro was allowed to take equipment and machinery left behind by Ink Solutions when it vacated the facility.

We further conclude that defendant Mortillaro acted in good faith in taking the equipment and barrels of ink that he received from the landlord of Ink Solu-

tions. Nothing in the record suggests that the transactions was not in good faith.

The transfer was an arm's-length transaction and was without any suggestion of impropriety. The landlord entered into the transaction because he was faced with the undesirable prospect of incurring considerable expense in properly disposing of an unknown number of barrels of ink that could not be recycled.

As for defendant Mortillaro, he entered into the transaction because he was unemployed at the time and perceived an opportunity to utilize the equipment and machinery Ink Solutions had left behind to start his own ink recycling business. Mortillaro was willing to run the risk that he would eventually have to "pay the piper" and incur considerable expense in disposing of unrecyclable ink in exchange for taking equipment and machinery which would enable him to go into business for himself.

■ Finally, we conclude that defendant Mortillaro neither knew nor had reason to know that debtor had previously transferred the same assets to Ink Solutions, let alone that the transfer from debtor to Ink Solutions might be avoidable in the event debtor wound up in bankruptcy.

■ Actual knowledge is not required for § 550(b)(1) to apply. Something less than a complete understanding of the facts and receipt of a lawyer's opinion that a transfer is avoidable may suffice for purposes of § 550(b)(1). *Wasserman v. Bressman (In re Bressman)*, 327 F.3d 229, 236 (3d Cir.2003).

■ A subsequent transferee has the requisite knowledge when said transferee has knowledge of facts which would lead a reasonable person to believe that the transfer was avoidable and hence recoverable. *Id.* If said transferee has knowledge of facts which would suggest that a transfer might be fraudulent, for instance, and

further inquiry would reveal additional facts sufficient to alert the transferee that the transfer is recoverable, he cannot "sit on his heels" and thus avoid a finding that he had the requisite knowledge. *Id.*

■ A subsequent transferee may not "close his eyes" to the presence of such additional facts and contend that the required knowledge is lacking. Said transferee does not, however, have a duty to investigate and to be a "monitor" for the benefit of the debtor's creditors when nothing to that point would indicate the existence of an avoidable transfer somewhere in the chain of transfers. *Id.*, 327 F.3d at 237.

Applying these precepts to the evidence presented at trial, we conclude that defendant Mortillaro had no knowledge of the avoidability of the transfer the chapter 7 trustee avoided in the other adversary action involving Ink Solutions. Mortillaro had no reason to investigate further to determine whether the transfer from debtor to Ink Solutions was avoidable.

During his employment by Ink Solutions defendant Mortillaro was not in a managerial position. He was paid on an hourly basis and was in charge of testing used ink to determine whether it could be recycled.

Defendant Mortillaro was not aware that debtor and Ink Solutions were separate entities. Michael Jones, the sole shareholder of both corporations, told Mortillaro in June of 2001 that debtor had merely changed its name to Ink Solutions. More importantly, defendant Mortillaro had no knowledge that debtor had transferred assets from one of its three facilities to Ink Solutions at some undisclosed time during the year 2001.

The record does not indicate from which of debtor's three facilities the equipment transferred to Ink Solutions had come. As

was noted previously, defendant Mortillaro worked for Ink Solutions in Maryland. It is not clear whether Mortillaro had any knowledge of the equipment located in the Pittsburgh facility. He had never worked for debtor at its facilities in Texas or Illinois. If the equipment came from the Texas and/or Illinois facilities which had closed, there is little or no reason to expect Mortillaro or, for that matter, any reasonable person to have known about the transfer from debtor to Ink Solutions.

Moreover, defendant Mortillaro had no knowledge of facts which would suggest to a reasonable person that the transfer from debtor to Ink Solutions was fraudulent or improper in any way, and hence was avoidable. The facts of which he was aware would not have prompted a reasonable person to investigate further before engaging in the transaction with the landlord of Ink Solutions. It cannot be said that defendant Mortillaro "buried his head in the sand" so as to keep from learning the truth about the transfer from debtor to Ink Solutions.

It was previously noted that debtor's facility in Illinois had closed down in June of 2001 and that the Texas facility had closed down in February of 2002. Defendant Mortillaro testified at trial that he was aware that these two facilities had closed and was also aware that debtor had lost a "big account" around the time of the closings.

The chapter 7 trustee would have us infer from this factual tidbit that a reasonable person would have come to wonder whether debtor was on the brink of bankruptcy when the transfer from debtor to Ink Solutions occurred and that defendant Mortillaro "buried his head in the sand" and should have delved deeper to ascertain whether that particular transfer was an above-board transaction.

We decline to draw this inference. It would be just as reasonable to conclude, as did defendant Mortillaro, that debtor was merely down-sizing so as to operate in a more cost-effective manner as it would be to wonder if debtor was on the brink of bankruptcy and might act in a way that would leave its creditors holding an empty bag. In our estimation, defendant Mortillaro had no reason to investigate further before engaging in the transaction with the landlord of Ink Solutions.

We conclude in light of the foregoing that the exception to recovery of the value of an avoided transfer from a subsequent transferee which is found at § 550(b)(1)of the Bankruptcy Code applies in this instance. As a consequence, the chapter 7 trustee may not recover from defendant Mortillaro the value of the avoided transfer from debtor to Ink Solutions.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** at Pittsburgh this *1st* day of *September,* 2004, for reasons set forth in the accompanying memorandum opinion, it is **ORDERED, ADJUDGED,** and **DECREED** that **JUDGMENT** is entered **IN FAVOR OF** defendant Louis Mortillaro and **AGAINST** Robert L. Williams, chapter 7 trustee.

It is **SO ORDERED.**